## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:

DONALD LYNN TROTT and
CINDY LU TROTT,

             Debtors.
_____/

Case No.6:17-bk-00431-KSJ
Chapter 7

## WELLS FARGO BANK, N.A. AS SUCCESSOR BY MERGER TO WACHOVIA BANK, N.A.'S MOTION FOR RELIEF FROM AUTOMATIC STAY
### [Re: 953 Sandlewood Drive, Port Orange, FL 32127]

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801, and serve a copy on the movant's attorney, Rachel L. Ahlum, at Aldridge | Pite LLP, Fifteen Piedmont Center, 3575 Piedmont Road, N.E., Suite 500, Atlanta, GA 30305 and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Wells Fargo Bank, N.A. as successor by merger to Wachovia Bank, N.A. ("Movant"), by and through undersigned counsel, files this *Motion for Relief from the Automatic Stay*, and in support states as follows:

      1.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. §362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable

provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.      On January 23, 2017, Debtors filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code.

3.      Debtors intention to surrender property at 953 Sandlewood Drive, Port Orange, Florida 32127.

4.      Movant holds a security interest in Debtors' real property located at 953 Sandlewood Drive, Port Orange, Florida 32127 (the "Property"), by virtue of a Mortgage which is recorded in the Public Records of Volusia County, Florida in Book 5531 at Page 3005. Said Mortgage secures a Note in the amount of $148,300.00. True and correct copies of the relevant loan documents are attached as **Composite Exhibit "A."**

5.      The aforementioned Mortgage gives Movant a 1st mortgage position on the Property legally described as:

> **Lot 8, Block 17, DEEP FOREST VILLAGE SUBDIVISION, according to the plat thereof recorded in Map Book 33, Pages 98 through 100, Public Records of Volusia County, Florida.**

6.      The Property has not been claimed exempt by Debtors. Additionally, the Property has not been abandoned by the Trustee.

7.      As of February 13, 2016, Debtors are indebted to Movant in the amount of $123,053.52, plus other fees and costs advanced by the mortgagee pursuant to the loan documents.

8.      As of March 29, 2016, payments pursuant to the Mortgage have been in default and remain in default since September 28, 2016.

**9.**      Furthermore, according to the Volusia County Property Appraiser, the estimated value of the Property is $146,108.00. See Volusia County Property Appraisal attached as **Exhibit "B."**

10.      Movant's security interest in the Property is being significantly jeopardized by Debtors' failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

11.      Movant respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(1), for cause, namely the lack of adequate protection

to Movant for its security interest in the Property. The value of the Property is insufficient in and of itself to provide adequate protection to Movant, which the Bankruptcy Code requires to be provided.

12.     Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the Property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtors.

13.     Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

14.     Movant seeks its attorneys' fees and costs incurred in filing this Motion for Relief from Automatic Stay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in the Property outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

/s/ *Wanda D. Murray*
Wanda D. Murray
Bar No.: 566381
Aldridge Pite, LLP
Attorney for Movant
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: wmurray@aldridgepite.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Motion for Relief from the Automatic Stay* was served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTORS ATTORNEY
(via electronic notice)**

Avie Meshbesher Croce
crocelaw@cfl.rr.com

**DEBTORS**

Donald Lynn Trott
Cindy Lu Trott
953 Sandle Wood Drive
Port Orange, FL 32127

**TRUSTEE
(via electronic notice)**

Arvind Mahendru
amtrustee@gmail.com

**UNITED STATES TRUSTEE
(via electronic notice)**

Office of the U.S. Trustee
USTP.Region21.OR.ECF@usdoj.gov

Dated: April 3, 2017

/s/ *Wanda D. Murray*

Wanda D. Murray
Bar No.: 566381
Aldridge Pite, LLP
Attorney for Movant
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: wmurray@aldridgepite.com

BK ▓▓▓▓  LOC: ▓▓▓▓  LN TP ▓▓
RC ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Date: **03/31/05**

Ref. No.
Acct. No

# Note

BORROWER(S):
DONALD L TROTT
CINDY L TROTT
953 SANDLEWOOD DR
PORT ORANGE, FL 32119

Amount Financed $ **148300.00**

**1.  BORROWER(S) PROMISE TO PAY.**  In return for a loan that I have received, the undersigned Borrower(s) (hereinafter referred to as "I," "me," or "my") jointly and severally promise to pay to Wachovia Bank, National Association, a national banking association organized and existing under the law of the United States of America ("Lender"), the sum of $ **148300.00** (this amount will be called "Principal"), plus daily simple interest ("Interest") beginning on the date that Principal is advanced. The Principal may include points, origination fees and other amounts permitted by applicable law. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note and who is entitled to receive payments under this Note will be called the "Note Holder."

**2.   INTEREST.**  Interest will accrue on the entire Principal balance outstanding at any time.  Notwithstanding anything to the contrary, I do not agree to pay and the Note Holder does not intend to charge any Interest at a rate that is higher than the maximum rate of Interest that could be charged under applicable law for the extension of credit that is agreed to under this Note (either before or after maturity).  If any notice of Interest accrual is sent and is in error, and if the Note Holder actually collects more Interest than allowed by law or this Note, the Note Holder agrees to refund any such excess Interest.

I agree to pay Interest on the unpaid Principal balance of this Note owing after maturity, and until paid in full at the same rate in effect before maturity.  I agree that any loan origination fee paid to the Note Holder is earned as of the date of this Note.

Interest accrues on the Principal remaining unpaid from time to time, until paid in full.  The Interest Rate, as defined in this Section 2 below, will be charged at a rate of 1/365th of the Interest Rate for each day, or 1/366th of the Interest Rate for each day in any leap year, applied against that day's outstanding Principal balance.  The dollar amount of the finance charge disclosed to me for this credit transaction is based upon my payments being received by the Note Holder on the date payments are due.  If my payments are received after the due date, even if received before the date a Late Charge as permitted by Section 4 applies, I may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of Principal.  This is a result of the accrual of daily Interest.

If the governing law which applies to this Note sets maximum loan charges and is finally interpreted so that the Interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such Interest or other charge shall be reduced by the amount necessary to reduce the Interest or other charge to the permitted limit and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial payment.

Check One:

[X] **Fixed Rate**
I agree to pay Interest on the outstanding Principal balance at a fixed annual rate of __**5.75**__ % ("Interest Rate").

[ ] **Adjustable Rate**
   **(A)  Interest Rate:**  I agree to pay Interest on the outstanding Principal balance at the initial annual rate of __**N/A**__ % ("Interest Rate") until the first Change Date as defined in Paragraph (B) below.  Thereafter, the Interest Rate I pay may change as of each Change Date and will be calculated pursuant to Paragraph (D) below.
   **(B)  Date Definitions:**
   **(i)   Change Date:**  The date that falls 12 month(s) from the date of this Note, and every 12 month(s) thereafter is called a "Change Date."
   **(ii)  Index Date:**  The 25th day of each month is an "Index Date."  If the Index is not published on the 25th day of the month, then the Index Date shall be the first day prior to the 25th day of the month on which the Index is published.
   **(iii) Look-back Date:**  The date that is 45 days prior to a Change Date is called the "Look-back Date."
   **(C)  The Index:**  Check One:

   [ ] The "Index" is the "Prime Rate" as published on the Index Date in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. If there is more than one Prime Rate published on an Index Date, then the Note Holder will use the higher of such prime rates. If this Index ceases to exist, the Note Holder may substitute another Index (and Margin, as described in Paragraph (D) below) which movement approximates the movement of the Prime Rate.

   [ ] The "Index" is the average of interbank offered rates for ____ month U.S. dollar-denominated deposits in the London market ("LIBOR") as published on the Index Date in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. If there is more than one LIBOR published on an Index Date, then the Note Holder will use the higher of such LIBOR rates. If this Index ceases to exist, the Note Holder may substitute another Index (and Margin, as described in Paragraph (D) below) which movement approximates the movement of LIBOR.
   **(D)  Calculation of New Interest Rate:**  The new annual Interest Rate that will be applicable beginning on each Change Date will be based on the Index published on the Index Date that occurs during the calendar month that

Composite Exhibit A

immediately precedes the Look-back Date for that Change Date. On the Look-back Date, the Note Holder will calculate my new Interest Rate by adding _____% ("Margin") to the index on the Index Date. Subject to any applicable limitations set forth in Paragraph (E), this new Interest Rate will become effective on each Change Date.

**(E) Limits on Interest Rate Changes:** If this Note is governed by North Carolina law, my Interest Rate will never be greater than 16.00%. Otherwise, my Interest Rate will never be greater than 18.00%. ☐ If this box is checked, Interest Rate increases will be subject to an additional limitation on each Change Date such that the Interest Rate I pay will never be increased on any single Change Date by more than _____% from the Interest Date I have been paying for the preceding 12 months. ☐ If this box is checked, there will be no additional limitation on increases in my Interest Rate.

**(F) Notice of Changes:** The Note Holder will deliver or mail to me a notice of any changes in my Interest Rate before the effective date of any change or as required by applicable law. The notice will include information about any changes to my Payment Amount.

**3.  PAYMENTS.**

**(A) Payment Options and Schedule:**

Check One:

☐ **Interest Payments with or without Principal Reduction Payments and/or a Balloon Payment:**

I will pay accrued Interest beginning on _____ as follows: check one: ☐ monthly or ☐ quarterly ("Interest Payments"). The amount of each Interest Payment will vary depending upon the amount of principal outstanding and if Section 2 of this Note provides for an Adjustable Rate, the Interest Rate then in effect. In addition to the Interest Payments, Principal Payments shall be payable as set forth in the Payment Schedule below:

☒ **Fully Amortizing Installment Payments or Installment Payments with a Balloon Payment:**

I will pay the unpaid Principal and Interest as set forth in the Payment Schedule below. If Section 2 of this Note provides for an Adjustable Rate, the payment amounts, including the final payment, as set forth in the Payment Schedule may change. On each Change Date, the Note Holder will determine the payment amount that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full over the remaining portion of a period of time ending on the Maturity Date as defined in paragraph (E), below, at my new Interest Rate. The result of this calculation will be the new payment amount. I will pay my new payment amount beginning on the first payment due date after the Change Date until the payment amount changes again or until the Maturity Date as described in Paragraph (E).

Payment Schedule:

| Number of Payments | Payment Amount | Frequency | Start/Due Date | Number of Payments | Payment Amount | Frequency | Start/Due Date |
|---|---|---|---|---|---|---|---|
| 360 | $ 868.20 | M | 05/19/05 | | $ | | |
| | $ | | | | $ | | |
| Frequency Legend: M = Monthly  Q = Quarterly  S = Semi Annually  A = Annually | | | | | | | |

**(B) Place of Payments:** I will make my payments in U.S. funds payable to the Note Holder at the address provided to me by the Note Holder or at a different address if required by the Note Holder.

**(C) Application of Payments:** Unless otherwise prohibited by the law governing this Note, each payment I make on this Note will first reduce the amount of accrued unpaid Interest, then any optional insurance premiums due, then any applicable unpaid charges and then unpaid Principal. I will make payments until I have paid all of the Principal and Interest and any other fees or charges that I may owe under the terms of this Note.

**(D) Maturity Date:** If on _____04/19/35_____, I still owe any amount under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."

**(E) Balloon Payment:** If the Payment Schedule requires me to make a final payment that is significantly larger than any other payment ("Balloon Payment"), I understand that I may be required to make this Balloon Payment on the Maturity Date. I understand that the law governing this Note may provide me with a right to refinance any Balloon Payment. If I have a right to refinance any Balloon Payment, the Note Holder will advise me as to whether I have a limited right to refinance and the terms surrounding such refinance. Otherwise, I understand that the Balloon Payment disclosed above will be due and payable on the Due Date disclosed above.

**4.  FEES AND CHARGES.** In addition to Interest and other amounts I may agree to pay, I agree to pay the Note Holder the following additional fees and charges:

**(A)** Late Charges: The following late charges will apply to the extent the Note is governed by the laws of the jurisdiction referenced in the subsection header or text:

(1) Alabama. If a scheduled payment or any portion is received more than 10 days after the day it is due, I will pay a late charge equal to 5% of the unpaid portion of the scheduled payment amount or $10, whichever is greater, but my late charge will never exceed $100.00

(2) Connecticut. If a scheduled payment or any portion is not received within ten (10) days of the date it is due, I will pay a late charge equal to the lesser of $10.00 or 5% of the scheduled payment amount.

(3) Mississippi. If a scheduled payment or any portion is received more than fifteen (15) days after the date it is due, I will be charged 4% of the unpaid portion of the scheduled payment or $5.00, whichever is greater, but my late charge will never exceed $50.00.

(4) New Jersey and Pennsylvania. If a scheduled payment or any portion is not received within fifteen (15) days of the day it is due, I will pay a late charge equal to 5% of the scheduled payment amount.

(5) North Carolina. If a scheduled payment or any portion is not received within fifteen (15) days of the date it is due, I will pay a late charge equal to four percent (4%) of the scheduled payment amount.

(6) South Carolina. If a scheduled payment or any portion is not received within ten (10) days of the day it is due, I will pay a late charge equal to five percent (5%) of the scheduled payment amount (but not less than $5.80 nor more than 14.50) or such greater amounts as may be authorized by South Carolina law from time to time.

Composite Exhibit A

(7) **Other.** If this Note is governed by the law of any jurisdiction other than those referenced in this subsection above and a scheduled payment or any portion is not received within ten (10) days of the date it is due, I will pay a late charge equal to 5% of the scheduled payment.

**(B) Returned Payment Fee:** Unless otherwise limited or prohibited by the law governing this Note, I will pay a charge of up to $25.00 for each payment (check or automatic payment) that I make that is returned or dishonored for any reason.

**(C) Prepayment Charge:** If this Note is governed by the laws of Connecticut, Florida, Georgia, Tennessee or Virginia, and I prepay this Note in full at any time prior to the expiration of 2/3rds of the term of this Note, I will pay a prepayment penalty of $100.00. If this Note is governed by Maryland law and Lender will be secured in the first lien position as of the date of this Note, and if I make a full prepayment of the Principal at any time prior to the expiration of 2/3rds of the term of this Note, I will pay a prepayment penalty of $100.00. If this Note is governed by the laws of a jurisdiction other than those referenced in this subsection above, I will not have to pay a prepayment penalty.

**(D) Origination Fee.** If an origination fee or other fee or charge is charged as included on the HUD-1, HUD-1A, or Itemization of Amount Financed prepared in connection with this loan transaction, I agree to pay such fees and charges. Except as otherwise required by law, I agree that such fees and charges are fully earned as of the date of this Note and are nonrefundable upon prepayment.

**(E) Additional Charges:** I agree that if, during the term of this Note, I request other services related to servicing or administering my loan for which the Note Holder has a scheduled charge, I will, to the extent permitted by the law governing this Note, pay the Note Holder the then current fee for such services or request if the Note Holder agrees to perform such service or request.

**5. BORROWER'S FAILURE TO PAY AS REQUIRED AND TERMS OF DEFAULT.**

**(A) Terms of Default:** I will be in Default under this Note if any of the following things happen:

(1) If I fail to make any payment or comply with any of the terms of this Note or any other note with the Note Holder now or in the future; or

(2) If I make any false, incorrect or misleading representation or warranty at any time during the application process; or

(3) If I die; or

(4) If I become involved in any bankruptcy or insolvency proceeding; or

(5) If the collateral described in Section 6 or any schedule to this Note is used in violation of any law or regulation or if a judgment or lien is filed or levied against me or the collateral or the collateral is impaired, damaged, or removed from the custody of the Note Holder; or

(6) If I fail to abide by the term(s) of any Security Instrument or other documents described in Section 6 which secure payment of this Note.

**(B) Notice of Default:** If I am in Default, then the entire Principal balance, accrued interest, fees, and collection costs permitted to be collected under applicable law will be immediately due and payable. At its option or if required by law, the Note Holder may send me a written notice informing me of said Default and acceleration. If I make any payment after the Note Holder has demanded payment of the entire balance due, my payment will be applied to the unpaid balance due under this Note. The unpaid balance consists of the Principal Amount remaining due, plus accrued finance charges, unpaid Late Charges, collection costs, and all other amounts due to the Note Holder under this Note. The Note Holder shall also have other rights and remedies provided by law. If the net proceeds of collateral sold do not pay my indebtedness in full, I will pay the Note Holder the difference, plus Interest at the Note Interest Rate until the unpaid balance is paid in full. Any Default of this Note will also constitute an event of Default of any separate Mortgage, Deed of Trust or Security Deed securing this Note ("Security Instrument") or Pledge Agreement securing this Note. Upon Default, the Note Holder may proceed to enforce the terms of this Note or enforce any rights that it may have under the Security Instrument or Pledge Agreement.

**(C) No Waiver by Note Holder:** Even if, at a time when I am in Default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in Default at a later time. Any failure to enforce any provision of this Note by the Note Holder shall not constitute any waiver of such rights of the Note Holder to subsequently enforce such rights or remedies.

**(D) Payment of the Note Holder's Costs and Expenses:** If the Note Holder has required me to pay immediately in full as described above, and I fail to do so and such failure causes the Note Holder to incur additional expenses, the Note Holder will have the right to a refund of all of its costs and expenses to the extent not prohibited by law the governing this Note. Those expenses include, for example, reasonable attorneys' fees for an attorney who is not the Note Holder's salaried employee, foreclosure fees and court costs. In no event shall these expenses exceed fifteen percent (15%) of the unpaid balance plus Court Costs.

**6. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT.** In addition to the protections given to the Note Holder under this Note, a separate Security Instrument(s), on real property (the "Property") described in the Security Instrument and dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. The Security Instrument describes how and under what conditions I may also be required to make immediate payment in full of all amounts I owe under this Note. I agree to these conditions. Subject to applicable law, I understand that this loan is subject to repayment in full in the event the Property securing this debt is sold, conveyed or otherwise transferred.

If in addition to a Security Instrument, I pledge securities, cash accounts or other liquid collateral (the "Other Collateral") as Other Collateral for this Note, then I grant to the Note Holder a perfected security interest in such Other Collateral and all additions or replacements to, or proceeds of as is more fully described in the separate Collateral Pledge Agreement (the "Pledge Agreement") executed as of the same date as this Note. The Pledge Agreement describes the Other Collateral in detail and protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. The Pledge Agreement also describes how and under what conditions I may also be required to make immediate payment in full of all amounts that I owe under this Note. I agree to these conditions. If the Other Collateral includes securities, I agree to deliver immediately to the Note Holder, fully endorsed, any certificates for shares representing any stock dividend, stock split or right to subscribe. I further pledge and agree to deliver to the Note Holder, upon demand, additional Other Collateral satisfactory to the Note Holder in accordance with all margin requirements. If I do not provide the Note Holder with a perfected security interest in the Other Collateral and the Note Holder incurs any expenses, including attorneys' fees, in order to obtain a perfected security interest, I will be responsible for such expenses.

565957 (Rev 03)

3

(03/05) MS Real Estate Note

**Composite Exhibit A**

If I do not provide or assist the Note Holder in obtaining a perfected security interest in the Property or Other Collateral and the Note Holder incurs any expenses, including attorney's fees, in order to obtain a perfected security interest in such Property or Other Collateral, to the extent not otherwise prohibited by the law governing this Note, I agree that the Note Holder may add the amount of such expenses to the Principal and that such expenses will accrue Interest at the Note Interest Rate until paid in full.

**7.  PREPAYMENT.**
**(A)** Subject to the order of application of payments described in Section 3, I have the right to make payments of Principal at any time before they are due. A prepayment of all unpaid Principal is known as a "full prepayment." A prepayment of only part of the unpaid Principal is known as a "partial prepayment."
**(B)** If I make a partial prepayment, my next due date may be advanced. If I make a payment that is more than the amount that is due, the amount in excess of the amount due is called an "Excess Payment." If I make an Excess Payment, the Note Holder will assume that I want to reduce or skip my next scheduled payment or payments. If the Excess Payment is less than or equal to the next scheduled payment, the next scheduled payment will be reduced by the amount of the Excess Payment. If the Excess Payment exceeds the amount of my next scheduled payment, the number of payments that may be skipped will be determined by subtracting each subsequently scheduled payment from the Excess Payment. So long as the remaining portion of the Excess Payment exceeds the next scheduled payment amount, that payment may be skipped. When the remaining portion of the Excess Payment is equal to or less than my next scheduled payment, that remaining portion will be used to reduce the amount of the next scheduled payment. If I want the Note Holder to handle an Excess Payment differently, I will tell the Note Holder in writing. I understand that Interest will continue to accrue on the outstanding principal balance and that if I want maximum Interest savings from Excess Payments, I should continue to make payments on or before the scheduled due date.

**8.  BORROWER'S WAIVERS.** I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of non-payment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "Guarantors," "Sureties," "Co-Signers" and "Endorsers."

**9.  GIVING OF NOTICES.**
**(A)** Any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail addressed to me at the address contained in this Note. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.
**(B)** Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address provided to me by the Note Holder. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**10.  PAYMENT IN FULL. I AGREE THAT THE NOTE HOLDER MAY ACCEPT PAYMENTS MARKED "PAID IN FULL" WITHOUT ANY LOSS OF THE NOTE HOLDER'S RIGHTS UNDER THIS NOTE UNLESS I SEND THEM FOR SPECIAL HANDLING TO WACHOVIA BANK, NATIONAL ASSOCIATION, SPECIAL PAYOFFS, PO BOX 10723, ROANOKE, VA 24022.  ACCEPTANCE OF ANY PAYMENT SENT TO THE SPECIAL HANDLING ADDRESS DOES NOT WAIVE THE NOTE HOLDER'S RIGHT TO SUBSEQUENTLY REJECT SUCH PAYMENT IN ACCORDANCE WITH APPLICABLE LAW.**

**11.  EXTENSIONS AND MODIFICATIONS.** All Guarantors, Sureties, Co-Signers, Endorsers and I consent to any and all extensions of time, renewals, waivers or modifications which may be granted or consented to by the Note Holder as to the time of payment or any other provision of this Note. If in its sole discretion, the Note Holder permits an extension, renewal or modification to this Note, I agree to pay a charge not to exceed an amount permitted by the law governing this Note. All Guarantors, Sureties, Co-Signers, Endorsers and Makers hereby waive presentment, notice of dishonor, and protest hereof. This Note is the joint and several obligation of each Maker and shall be binding upon them and their heirs, successors and assigns.

**12.  INSURANCE REQUIREMENTS.** I agree to purchase property/hazard insurance insuring the Property against loss and as required by the Security Instrument. I acknowledge that I may obtain property/hazard insurance from any insurance company of my choice, subject to the Note Holder's right of approval which shall not be unreasonably withheld. Unless I provide the Note Holder with evidence of the insurance coverage required by my agreement with the Note Holder, the Note Holder may purchase insurance at my expense to protect the Note Holder's interests in the Property. This insurance may, but need not, protect my interests. The coverage that the Note Holder purchases may not pay any claim that I make or any claim that is made against me in connection with the Property. I may later cancel any insurance purchased by the Note Holder, but only after providing the Note Holder with evidence that I have obtained insurance as required by my agreement. If the Note Holder purchases insurance for the Property, I will be responsible for the costs of the insurance, including interest and any other charges the Note Holder may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance will be added to the Principal and will accrue Interest at the Note Interest Rate. I understand that the costs of the insurance obtained by the Note Holder may be more than the cost of insurance I may be able to obtain on my own.

**13.  RESPONSIBILITY OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each of us is jointly and severally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any Guarantor, Surety, Co-Signer or Endorser of this Note (as described in Section 7 above) jointly and severally guarantee the payment, when due, to any Note Holder hereof of all amounts from time to time owing on this Note. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. I and any Guarantor, Surety, Co-Signer or Endorser of this Note further agree that the failure by the Note Holder to perfect any security interest granted by this Note shall not affect my liability or the liability of any Guarantor hereon.

**14.  GOVERNING LAW.** This Note shall be governed by the laws of the State where the Property securing this loan is located and applicable federal law. If the Property securing this debt is located in Maryland, then this Note is governed by Maryland law, this Note is governed by *Md. Code Ann., Commercial Law §12-1001 et. seq.* and applicable federal law.

Composite Exhibit A

**15. GENERAL PROVISIONS.** I agree that I may not sell, assign or otherwise transfer my rights or obligations under this Note and that such action will be void. Any person who takes over my rights or obligations under this Note by operation of law will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of any Guarantor, Surety, Co-Signer or Endorser of this Note is also obligated to keep all of the promises made in this Note. This Note is intended by the Note Holder and me as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing signed by the Note Holder and me. This Note benefits the Note Holder, its successors and assigns, and binds me and my heirs, personal representatives and assigns. If any provision of this Note shall for any reason be held to be invalid or unenforceable, such determination shall not affect the enforceability of the remaining provisions of this Note. Headings are for convenience of reference only and shall not affect the construction of this Note or any other document associated with this loan.

**16. SAVINGS AND COMPLIANCE.** It is the intention of you and me to comply with applicable law. In each and every instance, our rights shall be limited by applicable law (to the extent such laws may not be effectively waived), construed so as to comply with such laws, and our rights may not be exercised except to the extent permitted by applicable law. No part of this agreement, nor any charge or receipt by you, is supposed to permit you to impose interest or other amounts in excess of lawful amounts. If an excess occurs, you will apply it as a credit or otherwise refund it and the rate or amount involved will automatically be reduced to the maximum lawful rate or amount. To the extent permitted by law, for purposes of determining your compliance with law, you may calculate charges by amortizing, prorating, allocating and spreading any such charges.

**17. DOCUMENTARY TAX.** For loans secured by real property located in Florida, the state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

## NOTICE TO BORROWER:

1. **CAUTION: IT IS IMPORTANT THAT THE BORROWER THOROUGHLY READS THIS NOTE BEFORE THE BORROWER SIGNS IT.**
2. **THIS NOTE IS SECURED BY EITHER A FIRST OR SUBORDINATE LIEN ON REAL PROPERTY.**
3. **THIS NOTE MAY PROVIDE FOR THE PAYMENT OF A PENALTY IF THE BORROWER WISHES TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THIS NOTE.**
4. **THE BORROWER IS ENTITLED TO A COPY OF THIS NOTE.**
5. **DO NOT SIGN THIS NOTE IF IT CONTAINS ANY BLANK SPACES.**
6. **THE BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

**For Texas residents only:** NOTICE TO CONSUMER: UNDER TEXAS LAW, IF YOU CONSENT TO THIS AGREEMENT, YOU MAY BE SUBJECT TO A FUTURE RATE AS HIGH AS 18 PERCENT PER YEAR.

By signing and sealing this Note, I agree under seal to the terms set forth above.

_____ [SEAL]
Borrower DONALD L TROTT

_____ [SEAL]
Borrower CINDY L TROTT

Any Guarantor, Surety, Co-Signer or Endorser of this Note acknowledges receipt and execution of the Co-Signer's Notice.

_____ [SEAL]
Guarantor - Co-Signer

_____ [SEAL]
Guarantor - Co-Signer

---

### FOR OFFICE USE ONLY

**Endorsement.**
Pay to the Order of _____

Without Recourse
_____

By: _____
Name: _____
Title: _____

Composite Exhibit A

04/13/2005 12:22 PM
Doc Stamp 519.05
Intangible Tax 296.60
Instrument# 2005-094360 # 1
**Book: 5531**
**Page: 3005**

Prepared By:
CHAD ESTES
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA  24022

**Return To:**
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA  24022

## MORTGAGE

THIS MORTGAGE made this day __31__ **March, 2005** _____ between the Mortgagor,
DONALD L TROTT AND CINDY L TROTT, HUSBAND AND WIFE

(herein "Borrower"), and the Mortgagee, Wachovia Bank, National Association, a national banking association organized and existing under the laws of the United States of America, whose address is Wachovia Bank, National Association, 301 South College Street, NC 0630, Charlotte, North Carolina 28288-0630 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.$_____**148300.00**_____ which indebtedness is evidenced by Borrower's Note dated _____**03/31/05**_____ and extensions, modifications and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on __**04/19/35**_____.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described Property located in the County of __VOLUSIA_____, State of Florida:

**SEE ATTACHED LEGAL DESCRIPTION**

which has the address of __953 SANDLEWOOD_____
PORT ORANGE FL    32127
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the Property covered by this Mortgage; and all of the foregoing, together with said Property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

**Any Rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenants and agreements of the Rider shall amend and supplement the covenants and agreements of this Mortgage, as if the Rider were a part hereof.**

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and, convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.**  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note. This Mortgage secures payment of said Note according to its terms, which are incorporated herein by reference.

2.  **Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations, under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

3.  **Hazard Insurance.**  a) Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any

RETURN TO / CALL FOR
COLUMBIA TITLE
FILE NO. 05-0281

Composite Exhibit A

other hazards, including but not limited to floods, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section 5.

b) All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

c) Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when the notice is given.

d) Except as provided in subsection 3(e) below, should partial or complete destruction or damage occur to the Property, Borrower hereby agrees that any and all instruments evidencing insurance proceeds received by Lender as a result of said damage or destruction, shall be placed in a non-interest bearing escrow account with Lender. At Lender's discretion, Lender may release some or all of the proceeds from escrow after Borrower presents Lender with a receipt(s), invoice(s), written estimates(s) or other document(s) acceptable to Lender which relates to the repair and/or improvements of the Property necessary as a result of said damage and/or destruction. Absent an agreement to the contrary, Lender shall not be required to pay Borrower any interest on the proceeds held in the escrow account. Any amounts remaining in the account after all repairs and/or improvements have been made to Lender's satisfaction, shall be applied to the sums secured by this Mortgage. Borrower further agrees to cooperate with Lender by endorsing all checks, drafts and/or other instruments evidencing insurance proceeds and any necessary documents. Should Borrower fail to provide any required endorsement and/or execution within 30 days after Lender sends Borrower notice that Lender has received an instrument evidencing insurance proceeds, or document(s) requiring Borrower's signature, Borrower hereby authorizes Lender to endorse said instrument and/or document(s) on Borrower's behalf, and collect and apply said proceeds at Lender's option, either to restoration or repair of the Property or to sums secured by this Mortgage. It is not the intention of either party that this escrow provision, and/or Lender's endorsement or execution of an instrument(s) and/or document(s) on behalf of Borrower create a fiduciary or agency relationship between Lender and Borrower.

e) Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in section 1 or change the amount of the payments. If under section 15 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Mortgage.

**4. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the Declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**5. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such actions as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this section 5, with interest thereon from the date of disbursal, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this section 5 shall require Lender to incur any expense or take any action hereunder.

**6. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in

Composite Exhibit A

lieu of condemnation, are hereby assigned and shall be paid to Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**8. Borrower Not Released; Forbearance By Lender Not a Waiver.**  Borrower shall remain liable for full payment of the principal and interest on the Note (or any advancement or obligation) secured hereby, notwithstanding any of the following: (a) the sale of all or a part of the premises; (b) the assumption by another party of Borrower's obligations hereunder; (c) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to Borrower or a subsequent owner of the Property; and (d) the release of all or any part of the premises securing said obligations or the release of any party who assumes payment of the same.  None of the foregoing shall in any way affect the full force and effect of the lien of this Mortgage or impair Lender's right to a deficiency judgment (in the event of foreclosure) against Borrower or any party assuming the obligations hereunder, to the extent permitted by applicable law.  Any forbearance by Lender in exercising any right or remedy hereunder or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**9. Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Mortgage but does not execute the Note (a "co-signer"): (a) is co-signing this Mortgage only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Mortgage or the Note without the co-signer's consent.

Subject to the provisions of section 14, any Successor in Interest of Borrower who assumes Borrower's obligations under this Mortgage in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Mortgage.  Borrower shall not be released from Borrower's obligations and liability under this Mortgage unless Lender agrees to such release in writing.  The covenants and agreements of this Mortgage shall bind and benefit the successors and assigns of Lender.

**10. Notice.**  Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower or the current owner at the Property Address or at such other address as Borrower may designate in writing by notice to Lender as provided herein, and any other persons personally liable on the Note as their names and addresses appear in Lender's records at the time of giving notice and (b) any notice to Lender shall be given by first class mail to Lender's address at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA  24022 or to such other address as Lender may designate by notice to Borrower as provided herein.  Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**11. Governing Law; Severability.**  The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located.  The foregoing sentence shall not limit the applicability of federal law to this Mortgage.  In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflicts shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable.  As used herein "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**12. Borrower's Copy.**  Borrower shall be furnished a conformed copy of the Note, this Mortgage and Rider(s) at the time of execution or after recordation hereof.

**13. Rehabilitation Loan Agreement.**  Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**14. Transfer of the Property or a Beneficial Interest in Borrower; Assumption.**  As used in this section 14, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Mortgage.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with section 10 within which Borrower must pay all sums secured by this Mortgage.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies by this Mortgage without further notice or demand on Borrower.

Composite Exhibit A

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**15. Default; Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this entire Mortgage, including the covenants to pay when due any sums under the Note secured by this Mortgage, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without demand or notice, notice of the exercise of such option being hereby expressly waived. Lender may invoke the power of sale hereby granted. Lender shall have the right to enter upon and take possession of the Property hereby conveyed or shall without taking such possession have the right to sell the same at public auction for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale, in some newspaper published in said county, and upon payment of the purchase money, Lender, or owner of the debt and this Mortgage, or auctioneer, shall execute to the purchaser for and in the name of Borrowers, a good and sufficient deed to the Property sold. Lender shall apply the proceeds of said sale: first, to the expense of advertising, selling and conveying said Property, including a reasonable attorney's fee; second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment in full of the principal indebtedness and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the date of said sale; and fourth, the balance, if any, shall be paid over to said Borrowers or to whomever then appears of record to be the owner of said Property. Lender may bid and become the purchaser of the Mortgaged Property at any foreclosure sale hereunder.

**16. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued if: (a) Borrower pays Lender all sums which then would be due under this Mortgage, the Note and Notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in section 15 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action, as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**17. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that so long as Borrower is not in default hereunder, Borrower shall, prior to acceleration under section 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration and/or foreclosure under section 15 hereof, or abandonment of the Property, Lender, in person or by agent, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Lender shall be liable to account only for those rents actually received prior to the foreclosure sale as provided in section 15. Lender shall not be liable to account to Borrower or to any other person claiming any interest in the Property for any rents received after foreclosure.

**18. Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (a) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by mailing a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**19. Legislation.** If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, this Mortgage or any Rider, unenforceable according to their terms, or all or any part of the sums secured hereby uncollectible, as otherwise provided in this Mortgage or the Note, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by this Mortgage to be immediately due and payable.

**20. Satisfaction.** Upon payment of all sums secured by this Mortgage, the conveyance of the Property pursuant to this Mortgage shall become null and void and Lender shall release this Mortgage. Borrower shall pay all costs of recordation, if any. Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee.

**21. Waiver of Homestead.** Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all rights of dower and curtesy in the Property.

**22. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Composite Exhibit A

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this section 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this section 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA 24022 of any default under the superior encumbrance and of any sale or other foreclosure action.

**IN WITNESS WHEREOF,** Borrower has executed this Mortgage and adopted as his seal the word ("SEAL") appearing beside his name.

Signed, sealed and delivered in the presence of:

_____     _____ [SEAL]
**Witness Signature**                    Borrower **DONALD L TROTT**
                                   Address **953 SANDLEWOOD**
                                         **PORT ORANGE**     FL   32127

Denise E Groody
**Witness Print Name**                   _____ [SEAL]
                                   Borrower **CINDY L TROTT**
                                   Address **953 SANDLEWOOD**
                                         **PORT ORANGE**     FL   32127

_____     _____ [SEAL]
**Witness Signature**                    Borrower
                                     Address

SARA Hardesty
**Witness Print Name**                   _____ [SEAL]
                                   Borrower
                                   Address

STATE OF ___Florida_____

COUNTY OF ___Volusia_____

This foregoing instrument was acknowledged before me this __31st Day of March, 2005__ (date) by
_____DONALD L TROTT and_____
_____CINDY L TROTT husband and wife_____
_____

who is personally known to me or who has produced ___driver's license___
(type of identification) as identification.

_____
Notary Public

NOTARY PUBLIC
STATE OF FLORIDA
**DENISE E. GROODY**
MY COMMISSION # DD107401
EXPIRES: June 20, 2006

_____
Notary Public Name (Typed, Printed or Stamped)

Composite Exhibit A

Instrument# 2005-094360 # 6
Page: 3010
Diane M. Matousek
Volusia County, Clerk of Court

**Schedule A**

Lot 8, Block 17, DEEP FOREST VILLAGE SUBDIVISION, according to the plat thereof recorded in Map Book 33, Pages 98 through 100, Public Records of Volusia County, Florida.

Composite Exhibit A

## SHORT TERM LOAN MODIFICATION AGREEMENT

**NOTICE TO CONSUMER:**

**This is a Consumer Credit Transaction**

I understand that:

- I should not sign this Modification Agreement before I read the entire document, even if otherwise advised.
- I should not sign this Modification Agreement if it contains any blank spaces.
- I am entitled to an exact copy of this Modification Agreement.

**BORROWER SIGNATURE**

I received and read a completed copy of this Modification Agreement before I signed it. I agree to all its terms. ALL BORROWERS MUST SIGN THIS MODIFICATION AGREEMENT AND RETURN ALL PAGES OF THIS DOCUMENT IN ORDER FOR IT TO BE EFFECTIVE.

_____                    3-5-10
Borrower  Donald L Trott                                  Date

_____                    3-5-10
Borrower  Cindy L Trott                                    Date

*****************************************************************************************************************

Lender:        Wachovia Bank, National Association

Authorized By:  Colleen Kowalczyk

Signature:      _____

Title:          Vice President

Composite Exhibit A

# SHORT TERM LOAN MODIFICATION AGREEMENT

**ADDITIONAL PROVISION OF DEFAULT UNDER THIS MODIFICATION AGREEMENT**
If I fail to meet the repayment terms of this Modification Agreement, then this Modification Agreement shall be null and void, and all terms and conditions of the Note that have been modified by this Modification Agreement may be reinstated, and I shall be responsible for payment of all amounts owed under the original terms of the Note.

Composite Exhibit A

# SHORT TERM LOAN MODIFICATION AGREEMENT

**MODIFICATION:** The new terms of my Note pursuant to this Modification Agreement are as follows:

- Outstanding Balance     $144702.21
- Monthly Payment     $671.99 **during the Modification Period**
- Interest Rate     3.000% **this rate is a FIXED RATE and is in effect during the Modification Period only**
- Monthly Due Date     the 28th day of each month
- Maturity Date     4/19/2035
- Balloon Payment     $ *estimate*

My first payment under the new terms above will be due on 2/28/2010.

[ X ] If checked here, you have agreed to waive unpaid interest accrued to the Date of this Modification Agreement, and any late charges accrued to the Date of this Modification Agreement that I may owe other than principal. This waiver does not apply to premiums for credit insurance or fees for a debt cancellation plan, if any, currently in effect in connection with my loan.

If the Note provided for a variable rate of interest, I understand that during the Modification Period the interest rate will be fixed, and will revert to a variable rate at the end of the Modification Period. At the end of the Modification Period the interest rate will be the rate provided for in the Note, and my Payments will be made in accordance with the terms of the Note.

If I am not paying enough principal with each payment to fully repay the amount owing in the time period stated, my new Minimum Monthly Payment will not be sufficient to fully repay the amount owed over the term of the Note, and I may have a balloon payment at maturity. If I previously had a balloon payment, the new final balloon payment may be higher than the original balloon payment.

If my payments are not consistently made when due my new Minimum Monthly Payment may not fully repay the amount owed over the term of the Note and my final payment may be higher.

If I purchased credit insurance or a debt cancellation plan and it is currently in effect, I understand that I must continue to pay the monthly cost for that insurance or plan, in addition to the amount stated for my Monthly Payment, in order to keep that insurance or plan in effect.

**DISCOUNTS REPLACED DURING MODIFICATION PERIOD:** The reduced interest rate replaces any discounts I may previously have received, whether or not that discount is specified in this section, during the Modification Period.

If I chose the Auto Draft Discount feature in the Note, my original interest rate included a discount for making that choice. I understand that my reduced interest rate does not also include a discount for using the Auto Draft Discount feature, and therefore my interest rate will not change during the Modification Period if the Auto Draft Discount feature is terminated. At the end of the Modification Period, my loan will revert to the original terms, including a discount for using the Auto Draft Discount feature as long as that feature is not terminated during the term of the Note.

**NO OTHER CHANGES:** I agree with the Bank that, except as modified by this Modification Agreement, all other terms of the Note including subsequent amendments, extensions, modifications, renewals or other documents not addressed in this Modification Agreement, and any related Security Instrument(s) remain unchanged and in full force and effect.

**CREDIT INSURANCE/DEBT CANCELLATION PLAN NOT EXTENDED:** If I have credit insurance or a debt cancellation plan that I purchased in connection with the Note, I understand that this Modification Agreement DOES NOT EXTEND the term of this credit insurance or debt cancellation plan. Credit insurance means credit life, disability, and/or involuntary unemployment insurance. All terms and conditions relating to any such credit insurance or debt cancellation plan remain unchanged by this Modification Agreement.

Composite Exhibit A

## SHORT TERM LOAN MODIFICATION AGREEMENT

| | |
|---|---|
| Borrower's Name:<br>Donald L Trott | Bank Name:<br>Wachovia Bank, National Association |
| Borrower's Name:<br>Cindy L Trott | Date of this Modification Agreement:<br>3/1/2010  ~~2/25/10~~ |
| | Visit Number |

In this Modification Agreement, "I," "me," and "my" refer to each borrower who signs this Modification Agreement. "You," "Your," and "Bank" refer to Wachovia Bank, National Association.

This Modification Agreement amends and supplements my Note dated 3/31/2005 in the original principal amount of $148300.00 made payable to Bank (the "Note"). The Note is secured by a mortgage or deed of trust or other security document (the "Security Instrument") of the same date as the Note describing my residential real estate. The Security Instrument and any other agreements which I have signed to secure payment of my Note are also changed to the extent necessary to reflect the changes in this Modification Agreement.

The original interest rate on the Note is 5.75%.

I have requested and the Bank has agreed to modify my Note as described in this Modification Agreement. The Bank will reduce the interest rate on the current outstanding balance for a period of thirty six (36) months (the "**Modification Period**"). If the interest rate was originally a variable rate of interest, I have also requested and the Bank has agreed to fix the interest rate during the Modification Period.

The "Effective Date" of this Modification Agreement shall be the date this Modification Agreement signed by all Borrowers is received by the Bank. I understand however that if this Modification Agreement is not received by the Bank within seven days of the Date of this Modification Agreement shown above, this Modification Agreement shall be void and none of its provisions shall apply.

All terms not defined in this Modification Agreement shall have the same meanings as stated in the Note.

If my Account is currently in foreclosure, you agree to suspend or cancel the foreclosure action as long as the terms and conditions of this Agreement are met.

**CURRENT TERMS:** The current terms of my Note, as of the Date of this Modification Agreement shown above, are:

- Outstanding Balance      $144702.21
- Monthly Payment          $868.20
- Interest Rate            5.750 - this rate is Fixed
- Monthly Due Date         the 19th day of each month
- Maturity Date            4/19/2035
- Balloon Payment          $

Currently I have a past due amount of 1463.82 on my Account. This amount may include principal, interest, late charges, property preservation fees, attorney's fees and other costs charged to my Account. The Bank and I agree to the following changes to the current terms of my Account, and that once the following changes are made, my Account will not be past due, unless I fail to make the agreed payments in the future.

Composite Exhibit A

MAR 0 8 2010

Account Number ▮▮▮▮▮▮▮

**Wachovia Bank, National Association CLOSING INSTRUCTIONS**

Date:    2/25/2010
To:      Donald L Trott
         Cindy L Trott

Thank you for letting Wachovia Bank, National Association help with your financing needs.  Enclosed you will find the Modification Agreement describing the modified terms you recently accepted.  All borrowers need to sign and return the enclosed Modification Agreement to:

> Wachovia Bank
> Retail Credit Servicing Account Analysis – VA0343
> 7711 Plantation Road
> Roanoke, VA  24020

If applicable, please return the completed documents in the <u>reusable</u> UPS envelope.  A UPS return label has been provided for your convenience.  Simply affix the label on the address section of the envelope.

The second set of documents is for your records.  If you have any questions please call us at 866-443-1310.  Thank you.

Visit Number

(08/08) Loss Mitigation HEL Modification Customer Closing Instructions

Composite Exhibit A



**Comptroller of the Currency**
**Administrator of National Banks**

Washington, DC 20219

March 20, 2010

Mr. James E. Hanson
Senior Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Applications to merge Wachovia Bank, National Association, Charlotte, North Carolina
       and Wachovia Bank of Delaware, National Association, Wilmington, Delaware with and
       into Wells Fargo Bank, National Association, Sioux Falls, South Dakota
       Application Control Number: 2009-ML-02-0012

Dear Mr. Hanson:

This letter is the official acknowledgement, authorization and certification by the Office of the
Comptroller of the Currency (OCC) that effective March 20, 2010 Wachovia Bank, National
Association, Charlotte, North Carolina and Wachovia Bank of Delaware, National Association,
Wilmington, Delaware merged with and into Wells Fargo Bank, National Association, Sioux
Falls, South Dakota, under the title of the latter.  As result of the merger, the OCC has
renumbered the charter number of Wells Fargo Bank, National Association (the resulting bank)
from charter number 1741 to charter number 1.

This letter is also the official authorization for Wells Fargo Bank, National Association to
operate the former main office of Wachovia Bank of Delaware, National Association and the
branch offices of Wachovia Bank, National Association and Wachovia Bank of Delaware,
National Association as branches of Wells Fargo Bank, National Association.  A list of branches
for the resulting bank will be sent under separate cover.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by e-mail at
Stephen.Lybarger@occ.treas.gov.  Please reference the application control number in any
correspondence.

Sincerely,

Stephen A. Lybarger

Stephen A. Lybarger
Large Bank Licensing Lead Expert

Composite Exhibit A



## Volusia County
# Property Appraiser
**Larry Bartlett, J.D.**

Volusia County FLORIDA

| Home | Search | Downloads | Exemptions | Agriculture | Maps | Tangible | Links | Contact |

Home   Search Choices   Search By Alternate Key   Property Information

Parcel Information: 6316-03-17-0080   **2017 Working Tax Roll**   Last Updated: 02-19-2017

### Owner Name and Address

| | | | |
|---|---|---|---|
| Alternate Key | 3644565 | **Parcel Status** | Active Parcel (Real Estate) |
| **Short Parcel ID** | 6316-03-17-0080 | **Mill Group** | 402 Port Orange |
| **Full Parcel ID** | 16-16-33-03-17-0080 | **2016 Final Mill Rate** | 20.05190 |
| **Created Date** | 31 DEC 1981 | | |
| **Property Class** | 01 Single Family | | |
| **Ownership Type** | | **Ownership Percent** | 100 |
| **Owner Name** | TROTT DONALD L & CINDY L | | |
| **Owner Name/Address 1** | | | |
| **Owner Address 2** | 953 SANDLE WOOD DR | | |
| **Owner Address 3** | PORT ORANGE FL | | |
| **Owner Zip/Postal Code** | 32127 | | |
| **Situs Address** | 953 SANDLE WOOD DR PORT ORANGE 32127 | | |

### Legal Description

LOT 8 BLK 17 DEEP FOREST VILLAGE MB 33 PGS 98-100 INC PER OR 3994 PG 3772 PER OR 5421 PG 1855 PER OR 5531 PG 3004

### Sales History

| Book Page | Sale Date | Sale Instrument | Qualified Unqualified | Improved | Sale Price |
|---|---|---|---|---|---|
| 5531 3004 | 03/2005 | Warranty Deed | Affiliated Parties | Yes | 166,000 |
| 5421 1855 | 10/2004 | Warranty Deed | Qualified Sale | Yes | 135,000 |
| 3994 3772 | 03/1995 | Warranty Deed | Qualified Sale | Yes | 91,000 |
| 3179 0976 | 07/1988 | Warranty Deed | Qualified Sale | Yes | 87,000 |
| 2849 0847 | 06/1986 | Warranty Deed | Affiliated Parties | Yes | 100 |
| 2606 1172 | 09/1984 | Warranty Deed | Qualified Sale | Yes | 86,000 |
| 2605 1697 | 09/1984 | Quit Claim Deed | Unqualified Sale | Yes | 100 |

### History of Values

| Year | Land | Bldg(s) | Misc. Impr. | Just Value | School Assessed | Non-School Assessed | School Exemption | School Taxable | Non-School Exemption | Non-School Taxable |
|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | 20,375 | 113,067 | 12,666 | 146,108 | 108,315 | 108,315 | 25,000 | 83,315 | 25,000 | 58,315 |
| 2015 | 20,375 | 94,930 | 12,486 | 127,791 | 107,562 | 107,562 | 25,000 | 82,562 | 25,000 | 57,562 |

Display Value History

### Land Data

| Code | Land Use Type | Frontage | Depth | No. Units | Unit Type | Rate | Depth | Loc | Shp | Phy | Just Value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0101 | IMP PVD THRU .49 AC | 94.0 | 107.0 | 94.00 | FRONT FEET | 230.00 | 94 | 100 | 100 | 100 | 20,375 |

| Neighborhood | 5744 DEEP FOREST VILLAGE SUB MB33 | Total Land Classified | 0 |
|---|---|---|---|
| | | Total Land Just | 20,375 |

### Building Characteristics

**Building Number: 116867   (Building 1 of 1)**

| Bldg. No. | Improvement Type | Base Perimeter | Year Built | Quality Grade | Architecture | Phys. Depr. | Func. Obs. | Loc. Obs. | Next Review |
|---|---|---|---|---|---|---|---|---|---|
| 116867 | Single Family | 188 | 1980 | 300 | | 23% | 0% | 0% | 2999 |

| **Roof Type** | GABLE | **Floors** | Carpet | **Bedrooms** | 3 | **4 Fixture Bath** | 0 |
|---|---|---|---|---|---|---|---|
| **Roof Cover** | ASPHALT SHINGL | **Wall Type** | Drywall | **X Fixture Bath** | 0 | **5 Fixture Bath** | 0 |
| **Heat Type1** | Forced Ducted | **Heat Source1** | Electricity | **2 Fixture Bath** | 0 | **6 Fixture Bath** | 0 |
| **Heat Type2** | | **Heat Source2** | | **3 Fixture Bath** | 2 | **7 Fixture Bath** | 0 |
| **Foundation** | | **Year Remodeled** | | **Fireplaces** | 1 | **A/C** | Yes |

| Section Number | Area Type | Exterior Wall Type | Number Stories | Year Built | Attic Finish | Bsmt Area | Bsmt Finish | Floor Area |
|---|---|---|---|---|---|---|---|---|
| 001 | Res BASE Area (BAS) | WOOD ON SHEATING OR PLYWD | 1.0 | 1980 | N | 0% | 0% | 1632 Sq. Feet |
| 002 | Porch, Open Finished (FOP) | WOOD ON SHEATING OR PLYWD | 1.0 | 1980 | N | 0% | 0% | 24 Sq. Feet |
| 003 | Finished Garage (FGR) | WOOD ON SHEATING OR PLYWD | 1.0 | 1980 | N | 0% | 0% | 576 Sq. Feet |

Exhibit B



**Miscellaneous Improvements**

| Improvement Type | Number of Units | Unit Type | Life | Year In | Grade | Length | Width | Depr. Value |
|---|---|---|---|---|---|---|---|---|
| RSP RES SWIM POOL | 450 SF | | 30 | 1980 | 3 | 0 | 0 | 11,781 |
| SER SCREEN ENC RES | 1,225 SF | | 30 | 1980 | 3 | 0 | 0 | 1,419 |
| PTO PATIO/CONCSLAB | 775 SF | | 30 | 1980 | 3 | 0 | 0 | 637 |

**Parcel Notes (Click button below to display Parcel Notes)**

**Planning and Building**

| Permit Number | Permit Amount | Date Issued | Date Complete | Construction Description | Occupancy Number | Occupancy Bldg |
|---|---|---|---|---|---|---|
| | | | | | | |

**Total Values**

| | | | |
|---|---|---|---|
| Land Value | 20,375 | **New Construction Value** | 0 |
| Building Value | 121,034 | **City Econ Dev/Historic** | 0 |
| Miscellaneous | 13,837 | | |
| Just Value | 155,246 | **Previous Just Value** | 146,108 |
| School Assessed | 110,590 | **Previous School Assessed** | 108,315 |
| Non-School Assessed | 110,590 | **Previous Non-School Assessed** | 108,315 |
| Exemption Value | 25,000 | **Previous Exemption Value** | 25,000 |
| Additional Exemption Value | 25,000 | **Previous Additional Exemption Value** | 25,000 |
| School Taxable | 85,590 | **Previous School Taxable** | 83,315 |
| Non-School Taxable | 60,590 | **Previous Non-School Taxable** | 58,315 |

MapIT    PALMS    Map Kiosk

**MapIT:** Your basic parcel record search including lot dimensions.

**PALMS:** Basic parcel record searches with enhanced features.

**Map Kiosk:** More advanced tools for custom searches on several layers including parcels.

Click Here
for Tax Bill
Info

Exhibit B